```
                    United States District Court
                      District of Massachusetts
```

|                                   |                        |
|-----------------------------------|------------------------|
| BENNETH O. AMADI,                 )                        |
|                                   )                        |
|         Plaintiff,                )                        |
|                                   )                        |
|         v.                        )                        |
|                                   )    Civil Action No.    |
| GARRETT McMANUS,                  )    16-10861-NMG        |
| THE DCF,                          )                        |
| COMMISSIONER LINDA S. SPEARS and  )                        |
| SEAN A. BERNARD,                  )                        |
|                                   )                        |
|         Defendants.               )                        |

**MEMORANDUM & ORDER**

**GORTON, J.**

This case arises from an ongoing custody proceeding in state juvenile court involving Benneth Amadi ("Amadi" or "plaintiff") and his four minor children.  Amadi claims that a state court judge, a Massachusetts state agency and two of its officials violated his constitutional and civil rights in the course of that custody proceeding.

Pending before the Court is plaintiff's motion for a preliminary injunction and defendants' motion to dismiss the complaint which this Court will treat as a motion to dismiss the amended complaint.  For the reasons that follow, the motion to dismiss for lack of jurisdiction will be allowed and the motion for injunctive relief will be denied as moot.

-1-

## I. Background

### A. The parties

Plaintiff Amadi is the father of four children, all under the age of 16, and a resident of Massachusetts. He is an attorney who appears in this case pro se.

Defendant Garrett McManus ("Judge McManus") is the state court judge presiding over the state custody proceeding in the Lynn Session of the Essex County Juvenile Court ("the Juvenile Court").

Defendant Massachusetts Department of Children and Families ("the DCF") is the party civilly prosecuting Amadi in the state custody proceeding.

Defendant Linda Spears ("Commissioner Spears") is the Commissioner of the DCF.

Defendant Sean Bernard ("Attorney Bernard") is the DCF attorney representing the DCF in the state custody proceeding.

### B. The alleged conduct

In July, 2013, the Massachusetts Probate and Family Court ("the Probate Court"), which has jurisdiction over divorce proceedings in Massachusetts, entered a temporary order granting Amadi sole legal and physical custody of his four children.

In January, 2014, the DCF commenced a separate "care-and-protection proceeding" in the Juvenile Court and removed the children from Amadi's custody. Amadi alleges that the DCF did

so based on his gender and "because [he] is a man". The DCF defendants claim that they commenced the proceeding and removed the children in response to "reports that Amadi had abused and/or neglected his children". The Juvenile Court convened a temporary custody hearing, also known as a "72-hour hearing", shortly thereafter and transferred custody of the children to their mother. Amadi asserts that representatives of the DCF intentionally lied to and defrauded the Juvenile Court during the 72-hour hearing.

Amadi declares that Attorney Bernard "unambiguously" informed Judge McManus during a subsequent pretrial hearing in the Juvenile Court that "the DCF ha[d] no case" and that the issues should instead be adjudicated in the Probate Court. Amadi characterizes Attorney Bernard's statement as a "judicial admission" that should have led Judge McManus to dismiss the case against Amadi.

Instead, Amadi alleges, Judge McManus asked Attorney Bernard whether the DCF would be able to prove its case and "fraudulently forced, coerced and goaded" Attorney Bernard into continuing to prosecute the case, even though the evidence consisted of "lies and deliberate misrepresentations". Amadi also insists that Judge McManus 1) harbored a bias against him and in favor of the mother of his children, 2) harassed and intimidated him in state court, 3) denied many of his motions

without reading supporting memoranda, allowing oral argument or explaining the reasons for the denials and 4) unfairly refused to take notes during Amadi's cross-examination of DCF witnesses.

The care-and-protection proceeding in the Juvenile Court is ongoing. Trial in that proceeding commenced in September, 2015 before Judge McManus. Amadi asserts that, pursuant to Juvenile Court Standing Order 1-10 ("the Standing Order"), the trial should have concluded within 30 days because Judge McManus did not request an emergency extension of time for trial. Amadi contends that Judge McManus "arrogantly, intentionally and inordinately" continued to delay the completion of trial in violation of the Standing Order. Amadi further claims that Judge McManus's violation of the Standing Order shows that Judge McManus no longer has jurisdiction over the care-and-protection proceeding in his court.

### C. Procedural history

Amadi initiated the instant action in this Court in May, 2016 by filing a complaint alleging that defendants, inter alia, harassed and intimidated him in the Juvenile Court, discriminated against him based on his gender, deprived him of his liberty interest in maintaining custody of his children and unduly delayed the adjudication of the custody proceeding. Those actions purportedly violated 1) Amadi's federal constitutional rights to due process and equal protection

pursuant to 42.U.S.C. § 1983 ("§ 1983"), 2) his state rights pursuant to various articles of the Massachusetts Declaration of Rights and pursuant to the Massachusetts Civil Rights Act ("MCRA") at M.G.L. c. 12, §§ 11H and 11I and 3) Juvenile Court Standing Order 1-10.

Amadi moved for a preliminary injunction to stay the custody proceedings in the Juvenile Court.  After defendants opposed his motion and moved to dismiss, Amadi filed an amended complaint alleging that defendants' misconduct also violated his rights under Articles 1, 2 and 3 of the United States Constitution and the First, Fifth, Eighth and Ninth Amendments thereto.  The amended complaint also clarifies that Amadi is suing Judge McManus, Commissioner Spears and Attorney Bernard in both their official and personal capacities.

The Court convened a hearing on defendants' motion to dismiss and plaintiff's motion for a preliminary injunction in June, 2016.

## II. Defendants' motion to dismiss for lack of jurisdiction

### A. Legal standard

A plaintiff faced with a motion to dismiss under Fed. R. Civ. P. 12(b)(1) bears the burden of establishing that the court has subject matter jurisdiction over the action. Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992).  If the defendant mounts a "sufficiency challenge", the court will

assess the sufficiency of the plaintiff's jurisdictional allegations by construing the complaint liberally, treating all well-pled facts as true and drawing all reasonable inferences in the plaintiff's favor. Valentin v. Hospital Bella Vista, 254 F.3d 358, 363 (1st Cir. 2001).

If the defendant advances a "factual challenge" by controverting the accuracy, rather than the sufficiency, of the alleged jurisdictional facts, "the plaintiff's jurisdictional averments are entitled to no presumptive weight" and the court will consider the allegations by both parties and resolve the factual disputes. Id.  The court has "broad authority" in conducting the inquiry and can, in its discretion, order discovery, consider extrinsic evidence or hold evidentiary hearings in determining its own jurisdiction. Id. at 363-64.

### B.   Younger abstention

Defendants seek dismissal because the doctrine of Younger abstention purportedly compels this Court to decline jurisdiction by abstaining from interfering with the ongoing custody proceeding in state court.

The Younger doctrine, as set forth in Younger v. Harris, 401 U.S. 37 (1971), embodies "a longstanding public policy against federal court interference with state court proceedings" and is premised upon principles of equity, federalism, comity and judicial efficiency. Mass. Delivery Ass'n v. Coakley, 671

F.3d 33, 40 (1st Cir. 2012). Federal interference with state proceedings might otherwise

> entail an unseemly failure to give effect to the principle that state courts have the solemn responsibility, equally with the federal courts to guard, enforce, and protect every right granted or secured by the constitution of the United States[.]

Steffel v. Thompson, 415 U.S. 452, 460-61 (1974) (internal quotation marks omitted). The United States Supreme Court ("the Supreme Court") has repeatedly recognized the tensions inherent in parallel judicial processes at the state and federal levels and outlined the circumstances in which the possibility of "undue interference" with state judicial proceedings warrants restraint by federal courts. See, e.g., Sprint Commc'ns, Inc. v. Jacobs, 134 S. Ct. 584, 588 (2013).

The First Circuit Court of Appeals ("the First Circuit") adopts a three-step approach to Younger abstention. Sirva Relocation, LLC v. Richie, 794 F.3d 185, 192-93 (1st Cir. 2015). Courts must assess whether a particular state proceeding qualifies for Younger abstention, consider whether the Middlesex factors support abstention and, if so, determine whether any exceptions to the Younger doctrine apply. Id.

State proceedings are subject to Younger abstention under the first step of the inquiry if they are criminal prosecutions, civil enforcement proceedings or civil proceedings involving orders "uniquely in furtherance of the state courts' ability to

perform their judicial functions". New Orleans Pub. Serv., Inc. v. Council of City of New Orleans, 491 U.S. 350, 368 (1989)("NOPSI"). See Sprint, 134 S. Ct. at 593-94 (clarifying that Younger abstention "extends to the three 'exceptional circumstances' identified in NOPSI, but no further").

To qualify for Younger abstention, state civil enforcement proceedings should resemble "criminal prosecution[s] in important respects" in that they, inter alia, 1) routinely involve a state actor as a party to the state proceeding, 2) were initiated, often by the state actor, in order to sanction the federal plaintiff for some wrongful act and 3) involve an investigation that culminated in a formal charge or complaint. Sirva, 794 F.3d at 193.

The next step in the Younger inquiry is to apply the Middlesex factors which require 1) an ongoing state judicial proceeding which 2) implicates important state interests and 3) provides an adequate opportunity for the plaintiff to raise his federal challenges in state court. Sprint, 134 S. Ct. at 593 (referring to Middlesex Cty. Ethics Comm. v. Garden State Bar Ass'n, 457 U.S. 423, 432 (1982)).

The last step is to consider exceptions to the Younger doctrine.  One such exception applies when the state proceeding was initiated in bad faith or for the purposes of harassment.

Sirva, 794 F.3d at 192.  Another applies when the state forum cannot adequately protect federal rights.  Id.

If the requirements for Younger abstention are met, the federal court must abstain from interfering with the state proceeding, see Rio Grande Cmty. Health Ctr., Inc. v. Rullan, 397 F.3d 56, 68 (1st Cir. 2005), "even where defendants claim violations of important federal rights," see In re Justices of Superior Court Dep't of Mass. Trial Court, 218 F.3d 11, 17 (1st Cir. 2000) (collecting cases).

**C.  Application**

Although it is undisputed that Amadi's federal § 1983 claims provide the Court with subject matter jurisdiction, defendants contend that Younger abstention requires the Court to abstain from asserting that jurisdiction and to dismiss all of the claims.

Defendants first point out that the Supreme Court has expressly identified child welfare and custody proceedings initiated by the state as a kind of civil enforcement proceeding subject to Younger abstention, Sprint, 134 S. Ct. at 592 (citing Moore v. Sims, 442 U.S. 415, 419-20 (1979)).

They submit that the Middlesex factors support abstention because 1) the custody proceeding which Amadi seeks to enjoin is an ongoing judicial proceeding in state court, 2) custody proceedings implicate the important state interest in resolving

"fights over a property or a person in the [state] court's control" without interference by another court, see Stratton v. Massachusetts, 2008 WL 4427203, at *7 (D. Mass. Sept. 26, 2008), and 3) state courts are presumed to be "fully competent to adjudicate federal constitutional and statutory claims", see Casa Marie, Inc. v. Superior Court of P.R. for Dist. of Arecibo, 988 F.2d 252, 262 (1st Cir. 1993).  Amadi responds by alleging, without offering further elaboration or supporting evidence, that the Juvenile Court is inadequate and incapable of adjudicating difficult questions of family law or issuing the kind of injunction that he seeks.

Plaintiff further avers that abstention is unwarranted because the "bad faith" exception to the Younger doctrine applies in this case.  The amended complaint alleges that the DCF initiated the state custody proceeding against him solely as a result of gender-based discrimination and personal bias, i.e., in bad faith and for the purpose of harassment.  Amadi supports those allegations by declaring in his affidavit that "DCF social worker" Sara Garofalo ("Garofalo") informed him that the DCF removed the children from his custody "because [he] is a man".

Defendants deny that they initiated the custody proceeding in bad faith or for the purpose of harassment.  They submit an affidavit of Garofolo describing a conversation that she had with Amadi in May, 2014 while she served as the temporary

supervisor of the social worker assigned to Amadi's case. During that conversation, she asserts, Amadi accused the DCF of "taking his children away from him because he is a man" after which she "specifically" informed him that the DCF does not discriminate against men or take custody of children based upon the gender of the parent. Defendants also offer an affidavit by Attorney Bernard declaring that the DCF initiated the custody proceeding not in bad faith but in response to 1) credible reports of child abuse and neglect and 2) Amadi's consistent refusal to cooperate with the DCF investigation into those reports.

After considering the factual allegations presented by the parties, the Court concludes that defendants have shown that the custody proceeding was not initiated in bad faith or based upon discrimination or bias. This Court will invoke the doctrine of <u>Younger</u> abstention because that proceeding is a qualifying state civil enforcement proceeding, the <u>Middlesex</u> factors support abstention and no exception to the <u>Younger</u> doctrine applies.

Accordingly, defendants' motion to dismiss for lack of jurisdiction will be allowed and, because the Court declines to assert jurisdiction over the action, defendants' motion to dismiss for failure to state a claim and plaintiff's motion for a preliminary injunction will both be denied as moot.

**ORDER**

For the foregoing reasons, defendants' motion to dismiss (Docket No. 18) is, to the extent that it seeks dismissal for lack of jurisdiction, **ALLOWED,** but is otherwise **DENIED as moot.** Plaintiff's motion for a preliminary injunction (Docket No. 3) is **DENIED as moot.**  The case is dismissed because the Court abstains from asserting jurisdiction over the action.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 11, 2016